Your Honor, this is the first case of the morning. Call 213-073 on behalf of Michael J. Licka v. Board of Fire & Police Commissioners of the City of Crystal Lake and Dave Licker, Mr. Bishop's capacity as Chief of the Police. On behalf of the Avalon Board of Fire & Police Commissioners, Ms. Erica J. Thomas, also joining me upon behalf of the Crystal Lake Police Chief, Mr. Ben Garrett. As far as the affiliate, Mr. Jedlicka is represented by Mr. Keith A. Collison. Good morning, Counsel. Good morning. Ms. Thomas. Thank you. May it please the Court, Mr. Garrett, Mr. Collison, thank you very much for your time this morning. My name is Erica Thomas and I am here representing the Board of Fire & Police Commissioners of the City of Crystal Lake. As the Court is aware, this appeal arises from a three-day suspension that was imposed on Officer Michael Jedlicka by the City of Crystal Lake Police Department. The suspension arose out of a citizen complaint that was made against Officer Jedlicka that arose from an investigation that he was called out to conduct. Counsel, I think you have a fairly good handle on the facts, but not to throw you off your stride, but I have a threshold question. What's the standard of review? I actually have the same question. What's the standard of review in this case? I believe the parties are in agreement that the standard of review is manifest weight of the evidence. Let me ask you, normally when it's manifest weight, the Court has determined whether or not there's an opposite conclusion apparent based on the factual findings. Inasmuch as there are apparently no factual findings here, what are we subjecting the manifest weight standard to? What are we reviewing? Well, I would assert that there were in fact factual findings. The Board of Fire and Police Commissioners did issue a written findings and decision that did contain certain factual findings. Well, given the fact that the Board did not conduct an evidentiary hearing, did the Board consider evidence? The Board did consider evidence. Yes, they did consider the position statements that were submitted by both parties, which did include not only attachments, but also evidence within those position statements. And the Board is more experienced, obviously, in weighing statements from private citizens versus a response from a police officer than this court does, because they do this on a regular basis, correct? Correct, absolutely. And in fact, so does, at the time, Chief Linder. And Chief Linder is the one who conducted the initial investigation. Keep in mind that this review process was a review of the investigation and the discipline that was imposed by Chief Linder. And it was Officer Jedlica's burden to show that the discipline was unwarranted or for some reason that the chief's imposition of that discipline was wrong. So Chief Linder's investigation consisted of taking statements. He had sworn police personnel under his command take statements from those complainants and also take statements from Officer Jedlica. And the chief concluded, based upon Officer Jedlica's corroboration of the majority of those statements, or that he couldn't recall if he had made those statements, that in fact the statements were made. They were inappropriate. They were bizarre and irrelevant to the investigation, such that these citizens were compelled to make a complaint against Officer Jedlica. And now the Board made a finding that these witnesses were credible. Yes. But the witnesses never testified or they didn't even submit affidavits. How should we review this finding then? Well, credibility, from the Board's standpoint, it was relying on Chief Linder's ability to judge the credibility of those complainants. As I indicated, sworn police personnel took those statements. And had there been any indication of a motive to lie, some type of bias, some type of prejudice against Officer Jedlica, surely that would have been reflected in the reports. Now, Officer Jedlica never, ever said to the Board or to Chief Linder, there's some type of bias or prejudice that these complainants have against me that should call into question their statements. Now, had he done so, the Board certainly would have had to contemplate whether it would have been appropriate to then have a full-out evidentiary hearing, to have those witnesses sworn, put under oath, and to listen to their statements firsthand. But there was no indication that these complainants were anything less than credible. His position at the original hearing was essentially that he didn't really make all of the statements. Is that sort of what? Yes. He corroborated some of the statements, minimized them, made them a little less inflammatory, and then initially said he didn't recall making the other statements. But then when it came time to submit his position statement, he vehemently denied making some of the statements. And your position is, given everything that was presented before the Board, regardless of what the standard of review is, whether we could review it de novo, he just simply did not carry his burden of showing that the suspension was unwarranted, correct? Absolutely. That's correct. Now, and to talk, my co-counsel is going to get into a little bit about the procedural remedy. You know, if the court feels that the trial court should be overturned, he's going to get into that a little bit. But I want to talk a little bit about the manifest weight standard here and the actual charges. The statements that were suggested, or excuse me, that were allegedly made by Officer Jedlica is when he reported to this burglary was, you guys are effing idiots. What would happen if someone came in the business and shot Judy? We wouldn't be able to help you. Well, that's inappropriate. You're swearing at the public. And you're also essentially saying to these crime victims, the city can't help you unless you help yourself. And what particular rule did that violate? The rules are laid out in the Employment Action Notice. But it's essentially the nature of the rule. I can't recall the exact title of it offhand. But the nature of the rule is that you should treat the public with respect and, you know, be professional. Not badger them. Yeah, not badger them. Not swear at them, of course. And be professional in your contact with them. Then he goes on to say, I live with Gaston Glock. I shoot first and ask questions after I'm done walking on them. If anything ever happens to me, my wife will own the city. Now, a single one of these statements has anything to do with his investigation of this burglary. So these statements could be, in fact, I think the trial court described them as bizarre. Strange, I think. Strange, bizarre. And I think that was part of the reasoning of the trial court, that bizarre statements don't necessarily justify a suspension. Well, the trial court, in my interpretation of what the trial court said, was that although some of the statements he acknowledged were, there was a whole hearsay issue. The trial court felt that some of the statements that the board relied on were hearsay, and appropriately so. And that since only some of them, according to the trial court, were admissible because they were not hearsay, that those statements were not sufficient to warrant the discipline. He didn't say that all, you know, the statements as a whole did not warrant discipline. He kind of felt like the hearsay issue parsed out the statements, and since we could only consider a couple, that wasn't enough for the discipline. Now, we, of course, very strongly disagree with the trial court's determination that the board could not consider hearsay statements. There is no right to an evidentiary hearing, and therefore, if there's no right to a hearing, how else do you get the statements to the board other than through documentary evidence or through essentially hearsay or secondhand in this case? Well, the officer also provided out-of-court statements, correct? Even if it's affidavit. He did. So wouldn't it all be hearsay on both sides, technically? Well, I guess. It's a definition of hearsay. There's no live testimony of a cross-examination, was there? No, there was not. But according to the officer, since he verified his position statement, all of his information in his position statement was admissible, but none of the police chiefs was admissible. It's not going to be hearsay, would it not? Yes, I agree. Yeah, verification doesn't change that. I agree. I agree. So with all of that in mind, we have a two-tiered review that was provided for in the Board of Fire and Police Commissioners Act. It was provided for in the rules of the Crystal Lake Board of Fire and Police Commissioners. All due process that was guaranteed to Officer Judt Mika was, in fact, provided. The board conducted a very thorough and contemplative review of the evidence and came to the conclusion that the chief's discipline was warranted. Now, let's talk a little bit about the history of Officer Judt Mika. Now, this was not his first disciplinary issue. He had six prior run-ins, disciplinary run-ins, all of which arose from improper interactions with the public. Counsel, excuse me. That was the bell. Now, I don't know if we have—was that the 10-minute? That was the 10-minute. Okay. Thank you very much. Thank you. Mr. Garrett? May it please the Court, my name is Benjamin Garrett. I'm here on behalf of James Flack in his official capacity as the Chief of Police of the City of Crystal Lake. Your Honors, the City and the Chief fully support the arguments that have been made by the Board of Fire and Police Commissioners. I'm not going to burden you with repeating those arguments. Of course, if you have any questions for the City based on what the Board has presented, I'd be happy to answer those. Justice Hudson and Justice Zinoff, you had asked questions about what facts are in the record to apply the manifest weight of evidence standard, and I would respectfully suggest and recommend you look at pages C-42 and C-161 of the record. At those pages of the record, the plaintiff himself admitted that he told the complainants of the crime here that he owns a Glock that he uses to protect his family, that he owns a large dog, that he has an alarm system. At page C-108 of the record, the facts show that the plaintiff said when he was asked questions about this incident, that he would shoot first and ask questions later. At pages C-26 to C-28 of the record, we have plaintiff's disciplinary history, which Ms. Thomas just referred to. Less than a year prior to this incident, Officer Jadlica was suspended for two days, also for inappropriate contact with the public. Was that the traffic? Yes, Your Honor. So respectfully, Your Honors, I suggest that those facts in the record more than support the finding of the Board of Fire and Police Commissioners that there was sufficient evidence of wrongdoing to justify the three-day suspension issued by Chief Linder at the time, now Chief Black. I do have a question for you. Does a disciplinary act require that a complaint against a sworn officer be supported by affidavit? And if that requirement is not met here, how do you get around that? Thank you, Justice. There are two different types of disciplinary investigations under the Disciplinary Act. If the investigation involves conduct that may result in discipline of more than three days, then there are several procedural requirements, including a sworn affidavit. The sworn affidavit requirement is specifically only where there is discipline of more than three days. That wasn't the case here. The requirements of the sworn affidavit don't apply to informal inquiries where it's discipline of three days or less. You're saying by the terms of the Act, it doesn't apply to discipline that's less than three days? That's correct. Okay. Your Honors, I'd like to emphasize a point from the City's perspective that wasn't mentioned by the Board, and that's the prejudice to the City in this case. The City did nothing wrong. The City investigated Officer Jedlica's misconduct. The City decided that three-day suspension was appropriate. When Officer Jedlica appealed to the Board of Fire and Police Commissioner, the Board asked for position statements. The City provided a position statement. In its position statement, the City said, if you want to hear from Oliver and Zell, we think you'd be convinced that they're credible. The City was willing to put them on. Justice Hudson, you asked about the fact that plaintiff's statements were also hearsay, and that's absolutely right. The Chief himself was deprived of the opportunity to cross-examine the plaintiff. The Chief himself couldn't point out to the Board the inconsistencies in the plaintiff's statements in the investigation and compared to the statements he made in his sworn position statement, where in the investigations, I don't recall, I don't recall, I don't recall, all of a sudden in his sworn position statement, he vehemently denies some of the statements. How does the alleged prejudice tie into our decision-making process? Justice, the Circuit Court had the opportunity to remand the case to the Board of Fire and Police Commissioners for further proceedings consistent with his opinion. If hearsay shouldn't have been considered, if the Board erred by considering hearsay statements, which we don't think is the case based on the non-hearsay statements, but if that's the case, the matter should have been remanded to the Board for a hearing. The city here was required to pay three days of back pay for work that was never performed. Three days of pay out of the taxpayer dollars for work that was never performed. The citizens of Crystal Lake demand and deserve the highest standards of professional conduct for its police officers. Officer Jadlika's discipline for this incident is going to be removed from his file under the Circuit Court's decision. Now, we're not reviewing the Circuit Court's decision. Obviously, I assume you agree. We are reviewing the Board's decision. Yes, Your Honor. Okay. If the Board's decision is reversed instead of remanded, that discipline disappears. It can't be used for progressive discipline. Officer Jadlika committed an act of misconduct, and he would get off scot-free, not because he was innocent, but because of a procedural error that was completely beyond the city's control. And so that's the prejudice that you're alleging. Is that correct? Yes, Your Honor. For that reason, we ask that the case be reversed or, on the alternative, that it be remanded to the Board of Fire and Police Commissioners. Thank you very much. All right. You'll have time for rebuttal. Thank you. Mr. Carlson? Yes. Good morning to the police and the court. My name is Keith Carlson. I'm here on behalf of Police Officer Michael Jadlika. Rather than stick to my pre-prepared statement, I think I'll try to jump into the things that you were interested in. First, with regard to standard of review. Standard of review, everyone here has agreed, is manifest way to the evidence. And universally, that has meant that the decision has to be based on some competent evidence, ranging from Marconi in the Supreme Court to this Court's many decisions on the same issue. In other words, we reverse only where an apposite conclusion is clearly apparent. That's the legal definition. Correct. There needs to be some competent evidence in the record. In this case, the affidavit supported or submitted by the officer is the only competent evidence for a couple of reasons. One, it was never. What about the provision that was discussed that the affidavit requirement is not triggered for suspensions of three days or less? Interestingly, you bring that up, Justice Burkett, because originally this was a five-day suspension, and you didn't agree with the UPOTA issue, Uniform Peace Officer Disciplinary Act issue. Then it was reduced to three days. So when they were investigating this, they ended up going through the process, issuing a five-day suspension, which means that that should have been triggered, one. Two, the clear, plain language of UPOTA makes no exception for that. What it states is that each and every complaint by a police officer will be done so by sworn affidavit. If they had done that in this case, there would have been some competent evidence, at least sworn statements. As opposed to in this case, what happened is, and it's important to look at the board's meeting, closed session, executive session minutes, where they discussed this. They, first of all, consider evidence that was never provided to the applicant, to the plaintiff. They considered evidence. What are you suggesting that is, that evidence that was never provided? For instance, the HR director at Everhart provides how information was gotten, who made phone calls, and how that was produced. So, for instance, we learn in that that initially this complaint came in to a police sergeant, Lisey. It was then followed up on by Burketto. And then Lindner made determinations based upon those. So we are not only a single hearsay. We're a double and triple hearsay based upon who these people were and what they said. So the officer never had to be, if I'm wrong, the board, by the time it got to the board, the review was of a three-day suspension. Am I correct? You are correct. So it's a review of a three-day suspension, not a hearing to review a three-day suspension. It's a review of a three-day suspension. Everybody who imposes discipline, whether law enforcement or governmental agency, there has to be some system that allows for appropriate discipline without the requirement of full-blown hearings. And that's apparently what occurred here, correct? There may not always be a requirement for a full-blown hearing. In this circumstance, though, the decision that was reached by the board is against the manifest way of the evidence. And the reason it's against the manifest way of the evidence is that it considered no competent evidence to be able to support that. Well, but there was no request for an evidentiary hearing, was there? Absolutely there was. The initial, Judlica's first document when that discipline was issued was that he requested a full-blown hearing. Then I, as his attorney, received notice from the board's counsel saying submit briefs to be able to state what your positions are so we can determine whether to have a hearing. Then after we raised significant evidentiary issues, saying we objected to hearsay and we swear under oath that this did not happen, he did not use the f-word when talking to them. All he admitted to saying was I had, I admitted that I own a gun, which is pretty obvious. He's a police officer and had one in his hip when he was allegedly talking to them. Two, I have a dog at home. And I believe there was a third. Something about shooting first. Nope, he did not admit that. He specifically said, oh, and he has an alarm system. And that's in paragraph six of the position statement. He then writes in the next paragraph, officer Judlica specifically and vehemently denies ever telling citizens you guys are f-ing idiots or if anything ever happens to me, my wife will own this city. That's under oath. He states that under oath. Now, with regard to the city's claim that it's prejudiced somehow because it never had the opportunity to cross-examine Judlica, two problems with that. One, it has the opportunity and ability to order him to answer questions under the pains and penalties of losing his job any time it wants, basically, as long as it gives him written notice under the Uniform Peace Officer Disciplinary Act. So for the opportunity to be able to cross-examine and confront him about this has still never occurred, even though they had the opportunity. Second problem is, is if the city had a problem with this, it vehemently in its position statement, if you read in the record, opposes having a hearing in this case. It could have corrected any alleged perceived problems that it had, but instead what happened here is what was expected. I don't know if our decision is going to turn on the prejudice component, but let me clarify your position on the affidavit because I think it's a critical threshold position. Section 3AB of the Disciplinary Act requires that a complaint against a sworn officer be supported by affidavit. I think we can all agree with that. Correct. However, it's clear by the language of the statute that requirement is not triggered if there's only a suspension of three days. That's what happened here. So tell us why that exception doesn't apply here. I respectfully disagree that it only applies when it's to three days. That's when a formal investigation occurs. Nowhere does that section say that UPODA only applies to three-day suspensions. Where do you see that it says it has to apply? Well, it states that in every complaint against a sworn peace officer has to be supported by a sworn affidavit. In this case, when you look at the facts. What subsection is that? I don't have it at my fingertips. I've read the Act and the particular provision that triggers the affidavit requirement, and it's not triggered unless it's a suspension of more than three days. That's the way I read the Act. The other problem is that at the time they were investigating, they did suspend for more than three days, and then they lowered it later. That doesn't alleviate their problems of the investigation during the process. Let me ask this question with regard to your argument about manifest way to the evidence. In determining whether the officer made the alleged statements, isn't it proper for the board to consider the officer's history of making bizarre statements of a similar nature in the past, showing disrespect to people in the past? In other words, absent that history, the board may well have requested more information, but they felt they didn't need additional information. In light of the defendant's history or the plaintiff's history, they determined that proof was not required. They found that based on his history, he likely made these statements. It's akin to other crimes of evidence. Frankly, I hope you're not adopting that sort of reasoning, because what you're saying is that it's appropriate for an administrative tribunal to find an officer guilty, take away pay, without the opportunity to cross-examine, without the opportunity to hear his answer. Is it proper to consider his history? It's not. Not for the purpose of guilt or innocence. That only goes to aggravation and mitigation. In this case, you never get to that question, because they used that, exactly as you said, to determine guilt or innocence, which in every other time that I've ever seen that applied is totally inappropriate to use propensity evidence to be able to establish someone's guilt. In this case, they have sworn testimony from one of their own officers that says, I didn't say these things. Counsel, can we get to the merits here? Sure. You would concede that the burden of establishing that the suspension is unwarranted is on the plaintiff, correct? That's correct. And the only way we could establish that is with a hearing or through the… Getting aside, we didn't have the hearing here. The record is the record, as it is. Correct. It's based on the documents. It's based on the submissions, not on the hearing. So where in this does it establish that the suspension was unwarranted if the board, and they do have the right undisputably to judge the evidence, the credibility, limited to what is in the documents in front of them, if the officer's position is, look, I didn't make all of these statements anyway, so I'm telling you the truth, I didn't make these statements. But if the board were to find that he, in fact, made these statements, why would the suspension be unwarranted? On the merits, why would it be unwarranted? Because there's no competent evidence in the record. Well, set that aside for a second. We will decide if there's competent evidence to base the decision on. Sure. If we decide that the evidence was, quote, unquote, admissible and could be considered, why would the suspension be unwarranted given the nature of these statements? Tell us on the merits why a suspension is not appropriate. In a hypothetical situation where this was competent evidence, I guess. Your Honor, the problem is that from my officer's perspective, this never happened. I understand. And so speculating, if he had confronted people and told them they were fucking idiots and had told them that I shoot and kill people and that I have a dog, yes, discipline would be appropriate in those circumstances. The problem is here. He never said it. And he said so under oath, risking his job to do that. And he is exactly what Justice Burkett said. He was found guilty because they didn't like a disciplinary history. For all you know, discipline works. He changed his behavior. He asked for the opportunity to be able to confront these people who allegedly accused him to find out if they had a prejudice. Did you speak to or was there any attempt to interview the. I didn't know. I had no opportunity, as is indicated in paragraph five. Officer Judd Liggett, by counsel, has asked for and not received the identity of the person who allegedly complained. I had no opportunity to do it before this and after that. It was no longer at all relevant because it was all passed on to the board. Correct. There was no affidavit actually submitted by your client. An affidavit. I'm sorry. Was there? No. There's a verification that says under the pains of penalties provided by law, the undersigned certifies using the normal language. Certification. Correct. And it's important to note that the verified statement under oath was never objected to. And again, they had every opportunity to cross examine my client, a privilege, an opportunity my client never had. And it's important to note that these folks gave several different statements to police officers. They said they first spoke to Malisi, then they spoke to Burketta. And so we asked for that information. If you notice in the record, there's a request for subpoena. And you will see a counter from the city that says no, no, they're entitled to no discovery before we submit our statements. And the board never issued a subpoena. So we were never even afforded anything. The documents that were attached to the city's position statement. Under the act, isn't that the board's prerogative? If it's a suspension of less than three days, there's no necessity for them to. I think in certain circumstances it may be possible to have a disciplinary appeal met out without a hearing. What I'm saying is that in this circumstance, there was no way to do it properly. If they had an affidavit, perhaps. If they had sworn testimony. If they had turned over evidence and we were able to properly be able to investigate that. All of those things prohibited us from ever even being able to fairly investigate or be able to defend this matter. That's why to blow this off and say that this is simply some procedural niceties isn't. This is a deprivation of fundamental fairness. You didn't get a hearing, correct? Correct. You didn't get a hearing. The city says they were, the village says they were prejudiced. But you're saying we're prejudiced as well. We didn't get a hearing. What I'm saying is that the city actively opposed having a hearing. They didn't get prejudiced.  Please don't have a hearing. Well, I suspect we'll be asking them about that. In the end, what happened here is that you have a deprivation of fundamental fairness. So if this case were remanded, you contend in your brief that it would not be appropriate to have an evidentiary hearing because the chief already had the opportunity to present his evidence. The chief chose. Isn't that your position in your brief? It is our position. Our position in our brief is that we were deprived of the opportunity to have a hearing. That instead the chief chose to go forward and submit only inadmissible improper evidence and that that is the case he should be stuck with if this is remanded. If we were to remand this for a hearing, it was your argument we should not do it. But if we were to do that, we'd be rewriting the code. A hearing is not required. I'm not sure that that's always true. What authority is there for requiring a hearing where a suspension is for less than three days? Because there's a review. In certain circumstances. Excuse me, a review. But there's no definition of what that review must be, correct? That's correct. And this district has never reached that determination. Only the fifth district has, I believe. And what did they hold? I believe they held that there's not a right to a hearing in the circumstances of that particular case of under five days where there weren't issues of hearsay, where there weren't issues of confrontation, where there weren't issues of fundamental fairness. On top of that, it's important to note that the chief's position statement is supported by a bunch of hearsay statements that are recorded in a police report. A police report, which is like the least admissible form of hearsay. I mean, there's a special rule for it. So there's a significant prejudice here to Officer Jed Licka in that we never had an opportunity to fully develop a record. And with regard to whether or not they're entitled to a hearing, there's a certain bizarre aspect to this entire process, which is everyone agrees in the room that we're entitled to administrative review. And as one of you said very clearly, what are you here to review? To review what? If he's not entitled to a hearing and now he can be convicted on a discipline hearing, history, and hearsay evidence alone, why even afford officers the right to administrative review of suspensions of less than five days? A right that everyone here agrees that he has. Otherwise, officers are held to a totally non-ascertainable standard, and they are held to a standard that cannot be challenged reasonably before the administrative review because we have no opportunity to develop a record. Let me ask you this. What about the trial court? If I can, just the trial court statement where he says, in my judgment, the remaining statements, although strange, aren't that actionable. Isn't he re-weighing the evidence, which he's not supposed to do? No, I don't think so at all. With all due respect, the trial court got it right on that. What he says is that I think if you read in isolation, and what he's referring to are the things in Judge Lippitt's position statement, which he admits he interacted with two people. He further admits he mentioned having a Glock firearm that was used to protect his family. He also mentioned they had a large dog and an alarm system. And if you read those things in isolation, somebody talking to somebody, yeah, I have a big dog and a gun and an alarm system, you could view that as being bizarre, but in no way does that rise to the level of being, in this case, as required by the collective bargaining agreement and by acknowledgement of the city. Not just cause, as is traditionally met out under the standard BFPC rules, but just cause, which is a higher standard and requires, at very least, the opportunity to be able to confront people and have fundamental fairness in the process. I appreciate your time. Thank you. Mr. Garrett? Thank you again, Your Honors, for your time today. Your Honors, counsel for the plaintiff made an interesting admission that shouldn't be glossed over. Plaintiff's counsel just admitted that if the plaintiff said, I shoot first and ask questions later, that discipline would be appropriate. Well, during the city's investigation, when we interviewed Officer Jadlica, he admitted to making that statement. The plaintiff has now admitted that discipline was appropriate in this case. Given his lengthy disciplinary history, including the two-day suspension, the three-day suspension was the appropriate level of discipline for that misconduct. Do you agree that he asked for a hearing? I do agree that he asked for a hearing. I also agree that what the city said was, we don't think a hearing is required in this case. But if it is, if the board would like a hearing, we're able to put on Mr. Oliver, Ms. Zell, it might be Ms. and Ms. Dry, I apologize. We are willing to do that. We never said, no, we oppose a hearing. We said we don't think it's required, but if you want one, we're willing to have one. But if you say it's not required, doesn't it undercut your prejudice argument? You're saying we should have also had the opportunity to present evidence, but if you said a hearing is not required, isn't that a problem for your prejudice argument? The issue with prejudice, Your Honor, is that, as Justice Burkett mentioned, it's the board's responsibility to weigh the evidence and determine whether discipline is appropriate. If the court decides that those hearsay statements are inappropriate, it's for the board to decide whether the remaining non-hearsay statements justify discipline, or whether to say, you know what, we need to hear more. We want to have a hearing. We want to hear from Oliver and Zell. That's the board's decision. I understand that, but when you got up earlier and said, you know, we were prejudiced by the lack of a hearing, we should have had the opportunity. Consider the prejudice to the city here. Well, if you say we don't think a hearing is necessary, can't you see how that undercuts that argument? You either want a hearing or you don't want a hearing. I think that a hearing is not necessary based on the plaintiff's own admissions. If the court says those admissions aren't enough, or we can't tell what the board would have done with those admissions, then the board can decide they need a hearing for that purpose. I'd also like to respond to a couple of the specific statements made by counsel. First, there was a suggestion that five days was the original level of discipline under consideration. I'm not aware of any record evidence that suggests that. If you look at the Employment Action Notice at page C-28 of the record, that very clearly says that the discipline was going to be three days. Under 3.8b of the Disciplinary Act, as you guys have referred to, as the honors have referred to, that says when an officer is subjected to interrogation within the meaning of this act, the interrogation is conducted pursuant to 3.1 through 3.11 of the act. That's the only time that 3.8 is triggered. It wasn't triggered in this case. There was also a suggestion that the plaintiff never had notice about who made the complaint, and that is, again, untrue. If you look at page C-28 of the record, which is, again, the Employment Action Notice, it specifically references the fact that Mr. Oliver explained that he and his office manager filed a delayed report. Both Oliver and Zell stated that Jedlica made additional bizarre comments. So they were mentioned in the action. Yes. He had notice about who the complaint was coming from. And there was finally a suggestion that the plaintiff had requested a subpoena and that the board didn't issue an actual subpoena. Well, it's true the board didn't issue a subpoena, but the city short-circuited that process and responded to the subpoena. We produced what information we had, and that's at pages C-35 to C-40 of the record. So the subpoena issue is a red herring in this case. Your Honor, in light of the plaintiff's admission that he did, in fact, make inappropriate statements. These were two people who complained about a crime. The plaintiff has admitted that he made statements to them that were highly inappropriate. Those statements suggested that the city of Crystal Lake isn't an adequate backstop for you. You need to engage in vigilantism. You need to own your own gun. You need to own a dog. Well, that's your referring. That's what he meant. That's not what he said. I'm suggesting why those statements were inappropriate and why discipline was appropriate in this case, based on the plaintiff's own admitted statements here. Again, we ask that the judgment of the circuit court be reversed, the judgment of the board of fire and police commissioners to uphold the discipline be upheld, or, in the alternative, that the case be remanded to the board for further proceedings consistent with your decision.  Thank you, counsel. At this time, the court will take the matter under consideration and render a decision in due course. The court stands in brief recess until the next case. Thank you.